Jack Silver, Esq. SB  #160575
E-mail:lhm28843@sbcglobal.net
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.(707) 528-8175
Fax.(707) 528-8675

David J. Weinsoff, Esq. SB #141372
Email: david@weinsofflaw.com
Law Office of David J. Weinsoff
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760
Fax. (415) 460-9762

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, a 501(c)(3), nonprofit, public benefit Corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>SOILAND CO., INC.; MARK SOILAND; DOES 1 - 10 Inclusive,<br><br>        Defendants.<br>_____/ | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, RESTITUTION AND REMEDIATION (Environmental - CWA - 33 U.S.C. § 1251 *et seq.*)** |

NOW COMES Plaintiff, CALIFORNIA RIVER WATCH ("RIVER WATCH"), by and through its attorneys, and for its Complaint against Defendants, SOILAND CO., INC., MARK SOILAND and DOES 1 - 10 INCLUSIVE (herein collectively "DEFENDANTS") states as follows:

## I.      NATURE OF THE CASE

1.      This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §1251 *et seq.*, CWA § 505, including 33 U.S.C. § 1365, 33 U.S.C. §1311, and 33 U.S.C. § 1342, to prevent

DEFENDANTS from repeated and ongoing violations of the CWA.  These violations are detailed in the Notice of Violations and Intent to File Suit dated January 16, 2014 (" CWA NOTICE") made part of this pleading and attached hereto as EXHIBIT A.

2.     RIVER WATCH alleges DEFENDANTS who obtained coverage as a facility operator under the California General Industrial Storm Water Permit for Industrial Storm Water Discharges, National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ) issued pursuant to CWA § 402(p), 33 U.S.C. § 1342(p) (hereafter, "General Permit"), for the private compost manufacturing business commonly referred to as Grab N' Grow Soil Products located and operating at 2759 Llano Road in the City of Santa Rosa, Sonoma County, California, (hereafter, "the Facility") have failed and are failing to comply with the clear and specific terms imposed by the General Permit. DEFENDANTS have no individual facility NPDES permit authorizing any discharges from the Facility.  RIVER WATCH alleges the failure of DEFENDANTS to comply fully with the General Permit's mandatory sampling and analysis requirements results in the illegal discharge from the Facility of the specific pollutants identified in the General Permit applicable to compost facilities under SIC Code 2875 ("Fertilizers, Mixing Only") – iron, nitrate & nitrite nitrogen, lead, zinc, and phosphorus – as well as the pollutants resulting from an exceedance of the Environmental Protection Agency ("EPA") Benchmarks for pH, total suspended solids, specific conductance and total organic carbon or oil and grease.  RIVER WATCH alleges that the failure to comply strictly with the mandatory terms and conditions and best management practices ("BMPs") required by the General Permit (e.g., covering "significant materials" (compost materials), ensuring no discharge from open holding ponds, installing complete berming of the site, and washing trucks prior to their exiting the Facility) results in discharges of pollutants in violation of the CWA's prohibition with regard to discharging a pollutant from a point source to waters of the United States, in this instance the Laguna de Santa Rosa, pursuant to CWA § 301(a), 33 U.S.C. § 1311(a) and CWA § 505(f), 33 U.S.C. 1365(f).

3.     RIVER WATCH seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for DEFENDANTS' violations as set forth in this Complaint.

**II.     PARTIES TO THE ACTION**

4.     Plaintiff, CALIFORNIA RIVER WATCH, is now, and at all times relevant to this Complaint was, an Internal Revenue Service Code § 501(c)(3), nonprofit, public benefit corporation duly organized under the laws of the State of California, located at 290 South Main Street, #817, Sebastopol, California.  The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters of California including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educate the public concerning environmental issues associated with these environs.

5.     Members of RIVER WATCH reside in northern California where the Facility which is the subject of this Complaint is located.  Said members have interests in the waters and watersheds which are or may be adversely affected by DEFENDANTS' discharges and violations as alleged herein. Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury and interference with the interests of said members.

6.     RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant SOILAND CO., INC. is now, and at all times relevant to this Complaint was, a corporation registered with the State of California, the parent company of, and doing business at, the private compost manufacturing business known as Grab N' Grow Soil Products, located and operating at 2759 Llano Road in the City of Santa Rosa, Sonoma County, California, referred to in this Complaint as the Facility.

7.     RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant MARK SOILAND is now, and at all times relevant to this Complaint was, an individual residing in the County of Sonoma, the President and Chief Executive Officer of

1   Defendant SOILAND CO., INC., and the owner and operator of the Facility.

2   8.      RIVER WATCH is informed and believes and on such information and belief alleges

3   that Defendant  DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations

4   and entities, who are, or were, responsible for, or in some way contributed to, the CWA

5   violations which are the subject of this Complaint or are, or were, responsible for the

6   maintenance, supervision, management, operations, or insurance coverage of the Facility as

7   identified in the CWA NOTICE and this Complaint.  The names, identities, capacities, and

8   functions of defendants DOES 1 - 10, Inclusive, are presently unknown to RIVER WATCH.

9   RIVER WATCH shall seek leave of court to amend this Complaint to insert the true names of

10  said DOES Defendants when the same have been ascertained.

11  **III.    GENERAL ALLEGATIONS**

12  9.      DEFENDANTS submitted a Notice of Intent ("NOI") to the California State Water

13  Resources Control Board ("SWRCB") for coverage under the General Permit and on or about

14  March 18, 1996 obtained said coverage. The SWRCB assigned Waste Discharger Identification

15  ("WDID") number 1 49I022561 to DEFENDANTS, authorizing them to operate the Facility

16  consistent with the strict terms and requirements imposed under the General Permit.

17  Compliance with the terms and conditions (the environmental protections) within the General

18  Permit are not voluntary.  In the absence of an express "exemption" by the SWRCB from any

19  of the General Permit's terms and conditions, DEFENDANTS are required to comply strictly

20  with each and every one of them.  RIVER WATCH's review of the mandated Annual Reports

21  submitted to the North Coast Regional Water Quality Control Board ("RWQCB") for the

22  Facility for reporting years 2008-2009 through 2012-2013 reveals violations of the General

23  Permit at the Facility during this time period, specifically the failure to comply fully with the

24  requirements to: conduct annual sampling of two storm events and file the required Annual

25  Reports during the Reporting Years 2011-2012 and 2012-2013; develop and implement an

26  adequate monitoring and reporting program (Annual Reports for Reporting Years 2009-2010

27  and 2011 do not include sampling of so-called "Table D" pollutants – iron, nitrate & nitrite

28

nitrogen, lead, zinc, and phosphorus), and failing to comply with the terms and conditions of the General Permit requiring the preparation, implementation, review and update of an adequate Storm Water Pollution Plan ("SWPPP") that ensures the elimination of all non-authorized storm water discharges.  These alleged violations are detailed and specifically described in the CWA NOTICE.

## IV.    JURISDICTIONAL ALLEGATIONS

10.    Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. § 1251(e) provides, in pertinent part:

> "Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States."

11.    Subject matter jurisdiction is conferred upon this Court by CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), which states in relevant part,

> " … any citizen may commence a civil action on his own behalf - against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation. . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation ..."

For purposes of CWA § 505, "the term 'citizen' means a person or persons having an interest which is or may be adversely affected." (33 U.S.C. § 1365(g)).

12.    All illegal discharges and activities complained of in this Complaint and in the CWA NOTICE occur in the Russian River and its tributaries, including the Laguna de Santa Rosa, all waters of the United States.

13.    Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit from the waterway and associated natural resource into which DEFENDANTS allegedly discharges pollutants, or by which their operations at the Facility adversely affect those members' interests, in violation of the protections embedded in the NPDES Permitting program and the General Permit, CWA § 301(a), 33 U.S.C. § 1311(a), CWA § 505(a)(1),  33 U.S.C. §

1365(a)(1), CWA § 402, and 33 U.S.C. § 1342.  The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful violations as alleged herein.  RIVER WATCH contends there exists an injury in fact to its members, causation of that injury by DEFENDANTS' complained of conduct, and a likelihood that the requested relief will redress that injury.

14.     Pursuant to CWA § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), notice of the CWA violations alleged in this Complaint was given more than sixty (60) days prior to commencement of this lawsuit, to: (a) Defendants SOILAND CO., INC. and MARK SOILAND, (b) the United States Environmental Protection Agency ("EPA") Federal and Regional, and (c) the State of California Water Resources Control Board.

15.     Pursuant to CWA § 505(c)(3), 33 U.S.C.  § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

16.     Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the Facility under DEFENDANTS' operation and/or control, and the source of the violations complained of in this action, are located within this District.

**V.     STATUTORY AND REGULATORY BACKGROUND**

17.     CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual NPDES permit or a general NPDES permit issued pursuant to CWA § 402(p), 33 U.S.C. § 1342.  CWA § 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating storm water discharges under the NPDES program. States with approved NPDES permitting programs are authorized under this section to regulate storm water discharges through permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. EPA has authorized the SWRCB to issue NPDES permits including

1  general NPDES permits in California.

2  18.    The SWRCB elected to issue a statewide general permit for industrial discharges, and

3  issued the General Permit on or about November 19, 1991, modified the General Permit on or

4  about September 17, 1992, and reissued the General Permit on or about April 17, 1997,

5  pursuant to CWA § 402(p)

6  19.    In order to discharge storm water lawfully in California, industrial dischargers must

7  comply with the terms of the General Permit or have obtained an individual NPDES permit and

8  complied with its terms.

9  20.    The General Permit contains certain absolute prohibitions. Discharge Prohibition Order

10  Section A(1) of the General Permit prohibits the direct or indirect discharge of materials other

11  than storm water ("non-storm water discharges"), which are not otherwise regulated by a

12  NPDES permit, to waters of the United States.  Discharge Prohibition Order Section A(2)

13  prohibits storm water discharges and authorized non-storm water discharges that cause or

14  threaten to cause pollution, contamination, or nuisance. Receiving Water Limitation Order

15  Section C(1) prohibits storm water discharges to any surface or groundwater that adversely

16  impact human health or the environment.  Receiving Water Limitation Order Section C(2)

17  prohibits storm water discharges that cause or contribute to an exceedance of any applicable

18  water quality standards contained in a Statewide Water Quality Control Plan or the applicable

19  Basin Plan.

20  21.    In addition to absolute prohibitions, the General Permit contains a variety of substantive

21  and procedural requirements that dischargers must meet. Facilities discharging, or having the

22  potential to discharge, storm water associated with industrial activity that have not obtained an

23  individual NPDES permit must apply for coverage under the General Permit by filing a NOI.

24  The General Permit requires existing dischargers to file NOIs before March 30, 1992.

25  Dischargers must also develop and implement a SWPPP which must comply with the standards

26  of BAT and BCT. The SWPPP must, among other requirements:

27

28

Complaint For Injunctive Relief and Civil Penalties, Restitution and Remediation

1    •    Identify and evaluate sources of pollutants associated with industrial activities that may

2         affect the quality of storm and non-storm water discharges from the facility and identify

3         and implement site-specific BMPs to reduce or prevent pollutants associated with

4         industrial activities in storm water and authorized non-storm water discharges [Permit

5         Section A(2)].  BMPs must implement BAT and BCT [Permit Section B(3)].

6    •    Include a description of individuals and their responsibilities for developing and

7         implementing the SWPPP [Permit Section A(3)]; a site map showing the facility

8         boundaries, storm water drainage areas with flow pattern and nearby water bodies, the

9         location of the storm water collection, conveyance and discharge system, structural

10        control measures, impervious areas, areas of actual and potential pollutant contact, and

11        areas of industrial activity [Permit Section A(4)]; a list of significant materials handled

12        and stored at the site [Permit Section A(5)]; and, a description of potential pollutant

13        sources including industrial processes, material handling and storage areas, dust and

14        particulate generating activities, and a description of significant spills and leaks, a list

15        of all non-storm water discharges and their sources, and a description of locations where

16        soil erosion may occur [Permit Section A(6)].

17   •    Include a narrative assessment of all industrial activities and potential pollutant sources

18        at the facility [Permit Section A(7)].  Include a narrative description of the BMPs to be

19        implemented at the facility for each potential pollutant and its source, and consider both

20        non-structural BMPs (including "Good Housekeeping") and structural BMPs where non-

21        structural BMPs are not effective [Permit Section A(8)].

22   •    Conduct one comprehensive site compliance evaluation by the facility operator in each

23        reporting period (July 1- June 30), with SWPPP revisions made, as appropriate, and

24        implemented within 90 days of the evaluation [Permit Section A(9)].

25   22.   The General Permit requires dischargers to eliminate all non-storm water discharges to

26   storm water conveyance systems other than those specifically set forth in Special Condition

27   D(1)(a) of the General Permit and meeting each of the conditions set forth in Special Condition

28

Complaint For Injunctive Relief and Civil Penalties, Restitution and Remediation

D(1)(b).

23.     As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.  Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report [Permit Section B(14)]. Dischargers must also collect and analyze storm water samples from at least two storms per year in compliance with the criteria set forth in Permit Section B(5).  Dischargers must also conduct dry season visual observations to identify sources of non-storm water pollution in compliance with Permit Section B(7).

24.     Permit Section B(14) of the General Permit requires dischargers to submit an  "Annual Report" by July 1 of each year to the executive officer of the relevant Regional Water Quality Control Board. Permit Section A(9)(d) of the General Permit requires the dischargers to include in the annual report an evaluation of the dischargers' storm water controls, including certifying compliance with the General Permit.  *See also* Permit Sections C(9), C(10) and B(14).

25.     The EPA has established Parameter Benchmark Values ("EPA Benchmarks") as guidelines for determining whether a facility discharging storm water has implemented the requisite BAT and BCT. (65 Fed. Reg. 64746, 64767 (Oct. 30, 2000)).  California Toxics Rule ("CTR") limitations are also applicable to all non storm water and storm water discharges. (40 C.F.R. part 131).

26.     The RWQCB has established applicable water quality standards. This Basin Plan includes a narrative toxicity standard and a narrative oil and grease standard.  The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses." The Basin Plan establishes limits on metals, solvents, pesticides and other hydrocarbons.

Complaint For Injunctive Relief and Civil Penalties, Restitution and Remediation

27.    CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into the navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State agency.  These limits are to be incorporated into a NPDES permit for that specific point source.  Additional sets of regulations are set forth in the Basin Plan, CTR, the Code of Federal Regulation and other regulations promulgated by the EPA and the SWRCB.

28.    CWA § 301(a) prohibits the discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342.  The pollutants from the Facility are discharged from point sources under the CWA.

29.    The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

30.    In addition to the general prohibition against the unpermitted discharge of pollutants from a point source, CWA § 402(p), 33 U.S.C. § 1342 and 40 C.F.R. § 122.26 prohibits industrial storm water discharges without a permit. For storm water discharges allowed under CWA § 402(p), California's General Permit requires all facilities that discharge storm water associated with industrial activity to develop and implement a SWPPP.  RIVER WATCH alleges DEFENDANTS have not fully developed BMPs and/or have not adequately implemented a SWPPP for their operations at the Facility and the property upon which the Facility is sited, as evidenced by the fact that DEFENDANTS have failed and are failing to operate the Facility in full compliance with the terms and conditions imposed by the General Permit.

**VI.    VIOLATIONS**

31.    The enumerated violations are detailed in the CWA NOTICE and below, designating the section of the CWA violated by the described activity.

10

## VII.   CLAIM FOR RELIEF

**Violation of CWA § 301(a), 33 U.S.C. § 1311(a) – Violation of the General Permit.**

RIVER WATCH realleges and incorporates Paragraphs 1 through 31 as if fully set forth herein, including the CWA Notice.  RIVER WATCH is informed and believes, and based on such information and belief alleges as follows:

32.   DEFENDANTS have violated and continue to violate the CWA as evidenced by their violations of the General Permit as set forth in Paragraphs 2 and 9 of this Complaint and the CWA NOTICE.

33.   As described in the CWA NOTICE and herein, pursuant to CWA §§ 301(a) and 402(p), 33 U.S.C. §§ 1311(a) and 1342(p), and 40 C.F.R. § 122.26, RIVER WATCH alleges Defendants to be in violation of an effluent standard or limitation under the CWA and/or an order issued by the State with respect to such standard or limitation.

34.   By law and by the terms of the General Permit, violations of California's General Permit are violations of the CWA.  (40 C.F.R. § 122.4(a)).

35.   DEFENDANTS' violations are ongoing, and will continue after the filing of this Complaint.   RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted to the SWRCB, the RWQCB, or to RIVER WATCH with regard to the Facility prior to the filing of this Complaint.  RIVER WATCH will amend this Complaint if necessary to address DEFENDANTS' State and Federal CWA violations which may occur after the filing of this Complaint. Each violation is a separate violation of the CWA.

36.   RIVER WATCH alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases alleged herein.  Further, that the relief requested in this Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and protect the interests of its

1  members that are or may be adversely affected by DEFENDANTS' violations of the CWA, as

2  well as other State and Federal standards.

3  37.    RIVER WATCH alleges that continuing violations of the CWA by DEFENDANTS will

4  irreparably harm RIVER WATCH and its members, for which harm RIVER WATCH and its

5  members have no plain, speedy or adequate remedy at law.

6  **VIII.   RELIEF REQUESTED**

7         WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

8  38.    Declare DEFENDANTS to have violated and to be in violation of the CWA;

9  39.    Issue an injunction ordering DEFENDANTS to immediately operate the Facility in

10 compliance with the NPDES permitting requirements in the CWA;

11 40.    Order DEFENDANTS to pay civil penalties per violation/per day for their violations of

12 the CWA as alleged in this Complaint;

13 41.    Order DEFENDANTS to pay RIVER WATCH's reasonable attorneys' fees and costs

14 (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California

15 law; and,

16 42.    Grant such other and further relief as may be just and proper.

17

18 DATED: May 19, 2014                    _____

19                                        DAVID J. WEINSOFF
                                          Attorney for Plaintiff
20                                        CALIFORNIA RIVER WATCH

21

22

23

24

25

26

27

28



# EXHIBIT A

LAW OFFICE OF
DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, California 94930
tel. 415•460•9760  fax. 415•460•9762
weinsoff@ix.netcom.com

*Via Certified Mailing - Return Receipt*

January 16, 2014

Grab N' Grow Soil Products
Attn: Facility Operator/Site Manager
2759 Llano Road
Santa Rosa, CA 95407

Mark Soiland, CEO and President
Soiland Co., Inc.
Parent Company of Grab N' Grow Soil Products
7171 Stony Point Road
Cotati, CA 94931

**Re:   Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)**

Dear Owner, Operator and Site Manager:

## NOTICE

This Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act ("CWA" or "Act") 33 U.S.C. § 1251 *et seq.*, that River Watch believes are occurring at the Grab N' Grow compost facility located at 2759 Llano Road in Santa Rosa, California. Notice is being sent to you as the responsible owners, operators and/or managers of this facility and property. This Notice addresses the violations of the CWA, including violation of the terms of the General California Industrial Storm Water Permit, and the unlawful discharge of pollutants from Grab N' Grow into tributaries of the Laguna de Santa Rosa.

CWA § 505(b) requires a citizen to give notice of the intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the state in which the violations occur.

Notice of Violations Under CWA - Page 1

As required by the CWA, this Notice provides notice of the violations that have occurred, and continue to occur at the Grab N' Grow facility. Consequently, Grab N' Grow Soil Products and Soiland Co., Inc. ("Soiland Dischargers") are placed on formal notice by River Watch that after the expiration of sixty (60) days from the date of this Notice, River Watch will be entitled to bring suit in the United States District Court against Soiland Dischargers for continuing violations of an effluent standard or limitation, National Pollutant Discharge Elimination System ("NPDES") permit condition or requirement, or Federal or State Order issued under the CWA (in particular, but not limited to, CWA § 301(a), § 402(p), and § 505(a)(1), as well as the failure to comply with requirements set forth in the Code of Federal Regulations and the North Coast Regional Water Quality Control Board ("RWQCB") Water Quality Control Plan or "Basin Plan."

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto shall include sufficient information to permit the recipient to identify the following:

    *1.*    *The specific standard, limitation, or order alleged to have been violated.*

Those who discharge a pollutant from a point source to a water of the United States that is not "composed entirely of stormwater" are required to obtain a NPDES permit. To comply with this requirement, the dischargers must either obtain an individual NPDES permit, or comply with the substantive and procedural requirements of CWA § 402(p), specifically NPDES Permit No. CA S000001, State Water Resources Control Board, Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ (the "General Permit"). River Watch provides notice herein to Soiland Dischargers that they are in violation of these CWA permit requirements in their operations at the Grab N' Grow site.

Public records reveal that Soiland Dischargers agreed to comply with the terms and conditions of the General Permit and have not obtained an individual NPDES permit. Soiland Dischargers filed a Notice of Intent ("NOI") with the State Water Resources Control Board. The Board approved the NOI on or about March 18, 1996, and Soiland Dischargers were assigned Waste Dischargers Identification ("WDID") number 1 491012211[1]. River Watch contends that in the operation of the Grab N' Grow facility, Soiland Dischargers have failed and are failing to comply with the principal General Permit requirements – failing to submit Annual Reports (no reports were submitted to the RWQCB for the reporting years 2011-2012 and 2012-2013), failing to develop and implement an adequate monitoring and reporting program (reports submitted to the RWQCB for reporting years 2009-2010 and 2010-2011 do not include sampling of so-called "Table D" pollutants), and failing to comply with the terms and conditions of the General Permit requiring the preparation,

---

[1] For reasons not made clear by Soiland Dischargers in their 2009-2010 Annual Report, they identify the Facility WDID No. in that Report as 1 491022561.

implementation, review and update of an adequate Storm Water Pollution Prevention Plan ("SWPPP") that ensures the elimination of all non-authorized storm water discharges.

Full compliance with the annual monitoring and reporting program in the Annual Reports is central to the effectiveness of the General Permit program, as it is the principal regulatory means by which to confirm whether or not the pollution prevention programs embedded in the Grab N' Grow SWPPP are effectively working to prevent impermissible storm water discharges from that facility to the Laguna de Santa Rosa. Soiland Dischargers, however, have failed and are failing to comply with the following Annual Report requirements in reporting years 2009-2010, 2010-2011, 2011-2012, and 2012-2013:

a.      No Annual Reports Were Filed in Reporting Years 2011-2012 and 2012-2013

Soiland Dischargers operated the Grab N' Grow facility during the Reporting Years 2011-2012 and 2012-2013 but failed to file the required Annual Reports.[2]  During this period, in which Soiland Dischargers held neither an individual NPDES permit nor complied with the Annual Report requirements in the General Permit, Grab N' Grow Soil Products (acquired by Soiland Co., Inc. in 2009) and Soiland Co., Inc. were in operation[3], providing the services and products ("high quality soil, compost and mulch") identified on the Grab N' Grow website - http://www.grabngrowsoil.com/.

b.      Sampling and Analysis Results Were Incorrectly Provided in the 2009-2010 and 2010-2011 Annual Reports

The Annual Report form, in the Section titled *Specific Information*, E. Sampling and Analysis Results, identifies the following further violations: Subparagraph 10, specifically asks whether "Table D contain[s] any additional parameters related to your facility's SIC code(s)," and if so "[d]id you analyze all storm water samples for the applicable Table D parameters."

Soiland Dischargers state in the 2009-2010 and 2010-2011 Annual Reports that "No" additional parameters apply to the facility.  In fact, in addition to requiring the sampling for pH, Total Suspended Solids (TSS), Specific Conductance (SC), Total Organic Carbon (TOC) or Oil and Grease (O&G) required of all industrial facilities covered under the General Permit, the Dischargers are required to additionally sample for Iron (Fe), N+N (Nitrate & Nitrite Nitrogen), Lead (Pb), Zinc (Zn), and Phosphorus (P).  None of Soiland Dischargers'

---

[2] The State Water Resources Control Board notes on its website that Grab n' Grow terminated its industrial storm water permit on 4/22/10. Soiland Co., Inc. (listed as the facility operator on the 2011 Annual Report) terminated its permit on 3/4/13.

[3] Soiland Co., Inc. has been registered as a corporation with the California Secretary of State at all times during the period covered by reporting years 2009-2010 through 2012-2013.

Annual Reports identify sampling for applicable Table D parameters.

    c.    <u>Annual Comprehensive Site Compliance Evaluation (ACSCE)</u>

The Annual Report Form, in the Section titled I. *ACSCE Evaluation Report*, identifies the following further violation: The Evaluation Report requires that "[t]he facility operator … provide an evaluation report that includes … any incidents of non-compliance and the corrective actions taken."

Soiland Dischargers allegedly failed and are failing to identify and correct the deficiencies in Section "E" of the Annual Reports detailed above.

The Annual Report Form, in the Section titled J. *ACSCE Certification*, identifies the following further violations: The Certification requires facilities covered under the General Permit to state "[b]ased on your ACSCE, do you certify compliance with the Industrial Activities Storm Water General Permit?"

On each Annual Report Soiland Dischargers stated "Yes" – certifying compliance that both the SWPPP and Monitoring Program are up to date and fully implemented. The alleged failures to fully and accurately provide the required information on the Annual Report contradicts the signed "Annual Report Certification," which provides that the signer of the Annual Report attests that the "information submitted is, to the best of my knowledge and belief, true, accurate and complete."

    2.    *The activity alleged to constitute a violation.*

Operations at Grab N' Grow facility are covered under <u>both</u> the General Permit (as a compost facility classified in the NOI under SIC Code 2875[4]), and the CWA requirement that direct discharges from facilities whose activities are industrial in nature (in this case exposing raw materials through its on-site retail, wholesale, bagging and manufacturing of compost) obtain an individual NPDES permit. These operations are conducted in close proximity to the navigable waters of the Laguna de Santa Rosa (through unnamed tributaries and adjacent wetlands impacted by Soiland Dischargers' activities on the site). Because the real property on which the Grab N' Grow facility is located is subject to rain events, and because there is no exemption from collecting and analyzing the range of pollutants identified above, there can be a discharge of these pollutants from the facility to the Laguna de Santa Rosa – a navigable water of the United States that is impaired for nutrients and sediment, and which suffers a significant impact from discharges of mercury.

---

[4] SIC Code 2875 "Fertilizers, Mixing Only" is defined as "Establishments primarily engaged in mixing fertilizers from purchased fertilizer materials," further identified as "compost," "fertilizers, mixed: made in plants not manufacturing fertilizer," and "potting soil, mixed."

To properly regulate these activities and control the discharge of these types of pollutants, the State Water Resources Control Board requires an industrial facility to obtain and comply with the terms and conditions of an individual NPDES permit for direct discharges, and (at its election) seek coverage under the General Permit (or obtain exemption under the terms of the General Permit from its requirements) for its stormwater discharges. Review of the public record by River Watch reveals that Soiland Dischargers do not have an individual NPDES permit, and have either obtained coverage under the General Permit but fail to comply with its environmentally protective requirements, in particular the implementation of effective Best Management Practices ("BMPs") and compliance with the critically important sampling and comprehensive annual reporting requirements, or have failed to properly obtain coverage under the General Permit.

3.    *The person or persons responsible for the alleged violation.*

The persons responsible for the alleged violations are Grab N' Grow Soil Products, the facility business, and Soiland Co., Inc., – collectively referred to herein as Soiland Dischargers.

4.    *The location of the alleged violation.*

The location or locations of the various violations is the permanent address of the Grab N' Grow facility at 2759 Llano Road in Santa Rosa, California, including the adjoining waters of the Laguna de Santa Rosa (and its tributaries located in close proximity to the facility) – a water of the United States.

5.    *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

The range of dates covered by this Notice is from January 16, 2009 to January 16, 2014. River Watch will from time to time further update this Notice to include all violations which occur after the range of dates covered by this Notice. Some of the violations are continuous in nature, therefore each day constitutes a violation.

6.    *The full name, address, and telephone number of the person giving notice.*

The entity giving notice is California River Watch, 290 S. Main Street,, #817, Sebastopol, CA 95472 – a non-profit corporation organized under the laws of the State of California, dedicated to protect, enhance and help restore the groundwater and surface water environs of California including, but not limited to, its rivers, creeks, streams, wetlands, vernal pools, and tributaries.

River Watch may be contacted via email: US@ncriverwatch.org, or through its attorneys. River Watch has retained legal counsel with respect to the issues set forth in this Notice. All communications should be addressed to:

David Weinsoff, Esq.
Law Office of David Weinsoff
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. 415-460-9760
Fax. 707-528-8675
Email: lhm28843@sbcglobal.net

## STATUTORY BACKGROUND

CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual NPDES permit or a general NPDES permit issued pursuant to CWA § 402(p), 33 U.S.C. § 1342. CWA § 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating storm water discharges under the NPDES program. States with approved NPDES permitting programs are authorized under this section to regulate storm water discharges through permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. EPA has authorized California's State Water Resources Control Board to issue NPDES permits including general NPDES permits in California.

The State Water Resources Control Board elected to issue a statewide general permit for industrial discharges, and issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to CWA § 402(p).

In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained an individual NPDES permit and complied with its terms.

The General Permit contains certain absolute prohibitions. Discharge Prohibition Order Section A(1) of the General Permit prohibits the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by a NPDES permit, to waters of the United States. Discharge Prohibition Order

Notice of Violations Under CWA - Page 6

Section A(2) prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance. Receiving Water Limitation Order Section C(1) prohibits storm water discharges to any surface or groundwater that adversely impact human health or the environment. Receiving Water Limitation Order Section C(2) prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Quality Control Board Basin Plan.

In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet. Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a NOI. The General Permit requires existing dischargers to file NOIs before March 30, 1992.

Dischargers must also develop and implement a SWPPP which must comply with the standards of BAT and BCT. The SWPPP must, among other requirements:

- Identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges [Permit Section A(2)]. BMPs must implement BAT and BCT [Permit Section B(3)].

- Include a description of individuals and their responsibilities for developing and implementing the SWPPP [Permit Section A(3)]; a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity [Permit Section A(4)]; a list of significant materials handled and stored at the site [Permit Section A(5)]; and, a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur [Permit Section A(6)].

- Include a narrative assessment of all industrial activities and potential pollutant sources at the facility [Permit Section A(7)]. Include a narrative description of the BMPs to be implemented for each potential pollutant and its source, and consider both non-structural BMPs (including "Good Housekeeping") and structural BMPs where non-structural BMPs are not effective [Permit Section A(8)].

- Conduct one comprehensive site compliance evaluation by the facility operator in each reporting period (July 1- June 30), with SWPPP revisions made, as appropriate, and implemented within 90 days of the evaluation [Permit Section A(9)].

The General Permit requires dischargers to eliminate all non-storm water discharges to storm water conveyance systems other than those specifically set forth in Special Condition D(1)(a) of the General Permit and meeting each of the conditions set forth in Special Condition D(1)(b).

As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented. Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report [Permit Section B(14)]. Dischargers must also collect and analyze storm water samples from at least two storms per year in compliance with the criteria set forth in Permit Section B(5). Dischargers must also conduct dry season visual observations to identify sources of non-storm water pollution in compliance with Permit Section B(7).

Permit Section B(14) of the General Permit requires dischargers to submit an "Annual Report" by July 1 of each year to the executive officer of the relevant Regional Water Quality Control Board. Permit Section A(9)(d) of the General Permit requires the dischargers to include in the annual report an evaluation of the dischargers' storm water controls, including certifying compliance with the General Permit. *See also* Permit Sections C(9), C(10) and B(14).

The EPA has established Parameter Benchmark Values ("EPA Benchmarks") as guidelines for determining whether a facility discharging storm water has implemented the requisite BAT and BCT. (65 Fed. Reg. 64746, 64767 (Oct. 30, 2000)). CTR limitations are also applicable to all non storm water and storm water discharges. (40 C.F.R. part 131).

The RWQCB has established applicable water quality standards. This Basin Plan includes a narrative toxicity standard and a narrative oil and grease standard. The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses." The Basin Plan establishes limits on metals, solvents, pesticides and other hydrocarbons.

## VIOLATIONS

River Watch contends that between January 16, 2009 and January 16, 2014 Soiland Dischargers violated the CWA, the Basin Plan and the Code of Federal Regulations by discharging pollutants from the Grab N' Grow facility to waters of the United States without an individual NPDES permit, or in violation of the General Permit.

The violations discussed herein are derived from eye witness reports and records publicly available, or records in the possession and control of Soiland Dischargers. Furthermore, River Watch contends these violations are continuing.

As discussed above, Soiland Dischargers have failed and are failing to consistently sample for the full range of pollutants mandated by the General Permit (including those specifically identified in Table D).

Finally, River Watch also believes that the Grab N' Grow site is not operated to ensure that storm and non-storm water discharges are properly contained, controlled, and/or monitored. As a result, Soiland Dischargers fail to follow the requirements of the General Permit in their sampling protocols for the Grab N' Grow facility by failing to accurately capture "first flush" samples and failing to properly sample from all the outfalls of the facility.

## REMEDIAL MEASURES REQUESTED

River Watch believes that implementation of the following remedial measures are necessary in order to bring Soiland Dischargers into compliance with the CWA and reduce the biological impacts of their non-compliance upon public health and the environment surrounding the Grab N' Grow facility:

1.	Prohibition of the discharges above EPA Benchmarks of all the pollutants identified in the General Permit applicable to compost facilities, specifically including the additional Table D sampling requirement for Iron, Nitrate & Nitrite Nitrogen, Lead, Zinc, and Phosphorous;

2.	Compliance with all the terms and conditions of the General Permit (including sampling, monitoring, and reporting), and preparation of an updated SWPPP that conforms to, and incorporates the applicable provisions contained in: (i) *Stormwater Best Management Practice Handbook*, California Stormwater Quality Association, January 2003; and (ii) BMPs detailed in the EPA's Industrial Stormwater Fact Sheet Series "Section C: Chemical and Allied Products Manufacturing and Refining" (EPA-83-F-06-018; December, 2006 – http://www.epa.gov/npdes/pubs/sector_c_chemical.pdf); and,

3.	Sampling of storm water at least four (4) times per year over each of the next five (5)

years: at "first flush;" the first significant rain after "first flush;" the first significant rain after April 1; and the second significant rain after April 1.

## CONCLUSION

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day/per violation for all violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1-19.4.

The violations set forth in this Notice effect the health and enjoyment of members of River Watch who reside and recreate in the affected community. Members of River Watch use the affected watershed for recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by Soiland Dischargers' violations of the CWA as set forth in this Notice. River Watch believes this Notice sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch has cause to file a citizen's suit under CWA § 505(a) against Soiland Dischargers for the violations of the CWA described in this Notice.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations identified in this Notice. However, if Soiland Dischargers wish to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated soon so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,

David Weinsoff

DW:lhm

cc:     Administrator
        U.S. Environmental Protection Agency
        Ariel Rios Building
        1200 Pennsylvania Avenue, N. W.
        Washington, D.C. 20460

Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Executive Officer
Regional Water Quality Control Board
North Coast Region
5550 Skylane Blvd / Suite A
Santa Rosa, CA 95403

Marlene K. Soiland, Registered Agent
Soiland Co., Inc.
7171 Stony Point Road
Cotati, CA 94931